## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DOCTOR'S DATA, INC.,                )
                                    )
        Plaintiff,                  )       Case No. 10 C 03795
                                    )
        v.                          )       Judge Edmond E. Chang
                                    )
STEPHEN J. BARRETT, M.D.,           )
NATIONAL COUNCIL AGAINST            )
HEALTH FRAUD, INC., and             )
QUACKWATCH, INC.,                   )
                                    )
        Defendants.                 )

### MEMORANDUM OPINION AND ORDER

Plaintiff Doctor's Data, Inc. alleges that Defendants Stephen J. Barrett, M.D., the National Council Against Health Fraud, Inc., and Quackwatch, Inc. publish false and defamatory information about Doctor's Data on various websites owned and operated by Barrett. Doctor's Data alleges that Barrett's conduct violates Section 43 of the Lanham Act, 15 U.S.C. § 1125, as well as several Illinois state laws.[1] Defendants move to dismiss [R. 38] all of the counts. For the following reasons, Defendants' motion is granted in part and denied in part.

### I.

In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations. Doctor's Data is a scientific and medical laboratory in the business of analyzing blood, tissue, and other samples for health care practitioners. R. 24 (Compl.) ¶ 1. Some of Doctor's Data's clients practice traditional or "mainstream"

---

[1]The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1332.

medicine, while others would be considered practitioners of "alternative" medicine. *Id.* ¶ 34. Defendant Barrett is a retired physician who resides in, and is a citizen of, North Carolina. *Id.* ¶¶ 7-8. Barrett is the president of the National Council Against Health Fraud, Inc. (NCAHF), a named defendant in this case. *Id.* ¶ 15. Barrett operates NCAHF's website and edits Consumer Health Digest, a weekly electronic newsletter published on the site. *Id.* ¶ 16. Barrett is also the owner and operator of www.quackwatch.com. *Id.* ¶ 9. Defendant Quackwatch, Inc. dissolved in April 2009, but Plaintiffs allege that Barrett continues to do business under the name "Quackwatch." *Id.* ¶¶ 10-13.

Doctor's Data claims that Barrett uses his websites to disseminate false and misleading information about Doctor's Data and other medical laboratories. Doctor's Data attached seven articles to the complaint. *See* R. 24-1 – 24-7. Doctor's Data claims that these articles exemplify Barrett's efforts to damage Doctor's Data's reputation and harm its business. Compl. ¶ 54. For example, one of the articles authored by Barrett states that Doctor's Data defrauds patients by processing urine tests that are misleading and are then "used to persuade patients they are toxic when they are not." R. 24-1 (Pl.'s Exh. A) at 5. In another posting, Barrett writes that a patient sued Doctor's Data alleging that he was incorrectly diagnosed "and the test used to diagnose [the patient] – Doctor's Data's urine toxic metals test – is a fraud." R. 24-3 (Pl.'s Exh. C) at 1. Doctor's Data seeks a permanent injunction prohibiting Barrett from publishing disparaging statements on the internet as well as monetary damages.

2

## II.

Barrett first argues that Doctor's Data's claims were filed as part of a so-called "strategic lawsuit against public participation" (SLAPP) and should be dismissed pursuant to Illinois' anti-SLAPP statute, known as the Illinois Citizen Participation Act (ICPA), 735 ILCS 110/1, *et seq.* R. 40-1 (Defs.' Br.) ¶¶ 2-27. The ICPA, which became effective in 2007, immunizes acts undertaken "in furtherance of the constitutional rights to petition, speech, association, and participation in government . . . regardless of intent or purpose, except when not genuinely aimed at procuring favorable government action, result, or outcome." 735 ILCS 110/15. The ICPA "applies to any motion to dispose of a claim in a judicial proceeding on the grounds that the claim is based on, relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government." *Id.*

The ICPA requires a court to dismiss claims to which it applies unless the plaintiff produces "clear and convincing evidence that the acts of the moving party are not immunized from, or are not in furtherance of acts immunized from, liability by this Act." 735 ILCS 110/20(c). In other words, the ICPA's immunity "will apply where: (1) the defendant's acts were in furtherance of his rights to petition, speak, associate, or otherwise participate in government to obtain favorable government action; (2) the plaintiff's claim is based on, related to, or in response to the defendant's 'acts in furtherance'; and (3) the plaintiff fails to produce clear and convincing evidence that

the defendant's acts were *not* genuinely aimed at procuring favorable government action." *Sandholm v. Kuecker*, 942 N.E.2d 544, 564 (Ill. App. Ct. 2010).

Although Barrett argues that the entire complaint should be dismissed pursuant to the ICPA, only the state law claims are potentially covered by the Act. The ICPA does not apply to Doctor's Data's federal claims under the Lanham Act because such application would frustrate substantive federal rights. *See, e.g., Hilton v. Hallmark Cards*, 599 F.3d 894, 900-01 (9th Cir. 2010) (noting that California's anti-SLAPP statute gives no protection against a federal Lanham Act claim). The ICPA is a substantive law, *see Chi v. Loyola University Medical Center*,787 F. Supp. 2d 797, 808 (N.D. Ill. 2011); thus, applying it to federal claims would permit state law to affect and alter the substance of federal claims in violation of the Supremacy Clause of the Constitution. *See Martinez v. State of California*, 444 U.S. 277, 284 n.8 (1980). Moreover, applying the ICPA (and other state anti-SLAPP laws) to federal claims would frustrate uniformity in applying federal law by altering the scope of the Lanham Act from state-to-state. The ICPA applies to the state law claims only.

In any event, Doctor's Data argues that the ICPA does not apply at all in this case because North Carolina law governs whether or not Barrett is immune from liability for the state law claims asserted against him (the anti-SLAPP issue).[2] R. 70

---

[2]This argument was not raised in the first round of briefing on Defendants' motion to dismiss. Rather, the Court granted Doctor's Data leave [R. 72] to file a supplemental brief in opposition to Defendants' motion to dismiss in light of a recent ICPA decision issued in this district: *Chi v. Loyola Univ. Med. Ctr.*,787 F. Supp. 2d 797, 808 (N.D. Ill. 2011). Defendants filed a supplemental response [R. 73] to Doctor's Data's supplement, and Doctor's Data replied [R. 77].

4

¶¶ 15-19. Barrett maintains that Illinois law governs this issue and, therefore, the ICPA applies. R. 73 ¶ 3.

The Court applies the choice-of-law rules of Illinois, the forum state. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). In Illinois, a choice-of-law determination is only necessary when there is a conflict of laws and the difference will affect the outcome of the case. *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898-99 (Ill. 2007). Doctor's Data has identified a conflict between North Carolina and Illinois law, and the difference is clearly decisive. North Carolina does not have an anti-SLAPP statute. Thus, if North Carolina law applies, Barrett cannot assert an anti-SLAPP defense. On the other hand, if Illinois law applies, Barrett may invoke the ICPA, which "provid[es] a new, qualified privilege for any defamatory statements communicated in furtherance of one's right to petition, speak, assemble, or otherwise participate in government." *Sandholm*, 942 N.E.2d at 559-60. Then, if Doctor's Data is unable to produce clear and convincing evidence that Barrett's statements were *not* genuinely aimed at procuring favorable government action, the ICPA states that all of the state law claims against Barrett must be dismissed. *Id.* at 564, 570.

Illinois courts have adopted the approach of the Second Restatement of Conflict of Laws in making a choice-of-law determination. *Townsend*, 879 N.E.2d at 903. Under the Second Restatement approach, the objective is to apply the law of the state with the most significant relationship to the dispute and the parties, as defined by the issues raised. *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919-20 (Ill. 2007);

5

*Townsend*, 879 N.E.2d at 901 (Illinois follows the doctrine of *depecage*, "which refers to the process of cutting up a case into individual issues, each subject to a separate choice-of-law analysis.").

Doctor's Data's action is grounded in tort. The complaint sets forth ten causes of action under Illinois law, all of which are based on the allegedly defamatory statements published on Barrett's websites. In his defense, Barrett asserts that the ICPA applies to the statements made on his websites and, thus, immunizes him from any claims based on this speech. Under the doctrine of *depecage*, the issue of whether a statement is defamatory is distinct from the issue of whether that statement is privileged. *See Chi*, 787 F. Supp. 2d at 803; *Global Relief Found. v. New York Times Co.*, 2002 WL 31045394, at *10 (N.D. Ill. Sept. 11, 2002) (applying Illinois choice of law to find that Illinois law applied to defamation action, but that defenses to defamation, namely anti-SLAPP, should be considered under California law); *Wilkow v. Forbes, Inc.*, 2000 WL 631344, at *5 (N.D. Ill. May 15, 2000), *aff'd*, 241 F.3d 552 (7th Cir. 2001); *Vantassell-Matin v. Nelson*, 741 F. Supp. 698, 704 (N.D. Ill. 1990) (noting in choice-of-law context that "the threshold question [of defamation] and the defenses are different issues and call for different analyses"). The parties agree that Illinois law governs the alleged torts in this case. The conflict-of-law dispute is limited to whether Barrett's statements are potentially protected under Illinois law (as Barrett contends), or whether he is restricted to defenses recognized in North Carolina (as Doctor's Data contends).

The following factors are considered in deciding which state has the more significant relationship to this issue: (1) the place of the injury; (2) the place where the injury-causing conduct occurred; (3) the parties' domiciles; and (4) the place where the relationship between the parties is centered. Restatement (Second) of Conflicts of Laws § 145(2). In tort cases, the place of injury is a central factor in determining which state's law governs. However, as *Chi* recognized, this factor is less important in the anti-SLAPP context:

> The purpose behind an anti-SLAPP law is to encourage the exercise of free speech—indeed, Illinois's stated policy in enacting the ICPA was to "encourage [ ] and safeguard[ ] with great diligence" the "constitutional rights of citizens and organizations to be involved and participate freely in the process of government." 735 ILCS 110/5. In light of this policy goal, the place where the allegedly tortious speech took place and the domicile of the speaker are central to the choice-of-law analysis on this issue. A state has a strong interest in having its own anti-SLAPP law applied to the speech of its own citizens, at least when, as in this case, the speech initiated within the state's borders.

787 F. Supp. 2d at 803.

Of course, this case is different from *Chi* because Barrett, a citizen and resident of *North Carolina*, argues that his speech is protected under *Illinois*' anti-SLAPP statute. Barrett does not adequately explain why Illinois would have a significant interest in having its law applied to *non*-Illinois speakers. Nor does Barrett argue that the speech originated in Illinois, which would make the second factor (where the injury-causing conduct occurred) weigh in favor of applying Illinois law to Barrett's anti-SLAPP defense. In contrast, North Carolina has a significant interest in determining how much protection to give North Carolina speakers. *See Chi*, 787 F.

7

Supp. 2d at 803; *Global Relief*, 2002 WL 31045394, at *11. For these reasons, the Court concludes that North Carolina law governs. The ICPA does not apply to this action.

Even if the ICPA applied, the Court would not dismiss the state law claims at this early stage. Although "the Act's clear objective as an anti-SLAPP statute is to provide citizens with an immediate way to dispose of such lawsuits," *Sandholm*, 942 N.E.2d at 550, the parties would be entitled to engage in limited discovery on, at the least, whether the ICPA protects Barrett's statements, and specifically whether there is clear and convincing evidence that the statements were not genuinely aimed at procuring government action.

## III.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When ruling on a defendant's motion to dismiss, the Court must accept the plaintiff's allegations as true and draw reasonable inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010).

8

## A.

Doctor's Data claims that the statements on Barrett's websites violate the Lanham Act because they are false representations of fact that confuse and deceive the public about Doctor's Data's business and services. Compl. at 1, 16-19.[3] Barrett argues that Doctor's Data's false advertising claim under the Lanham Act must be dismissed because Doctor's Data fails to allege that: (1) Barrett is one of Doctor's Data's commercial competitors; and (2) Barrett's statements were made in a commercial advertising or promotion. Def.'s Br. at 14-19. Doctor's Data responds that the Lanham Act does not require the parties to be direct competitors, and the allegations in the complaint are sufficient to state a claim at this stage. R. 56 (Pl.'s Resp.) at 4-10.

Under Section 43, unfair competition claims can be can be divided into four broad categories: (1) cases involving the question of confusion or likelihood of confusion as to source, sponsorship, or association between plaintiff's and defendant's goods and services; (2) misrepresentations or false statements made in connection with the advertising and marketing of goods or the provision of services; (3) misappropriation of the efforts of others; and (4) cases seeking relief under Section 43(c) for dilution of famous marks. *See* 1 CHARLES E. MCKENNEY & GEORGE F. LONG, III, FEDERAL UNFAIR COMPETITION: LANHAM ACT § 43(a) § 2:25 (2011). Here, it is clear that Doctor's Data

---

[3]For the remainder of the opinion, the Court will cite to page numbers in the complaint, R. 24. Although the allegations in the complaint are organized by paragraphs, starting on page 16, the paragraph numbers repeat for each count – *e.g.*, Count 1 is at paragraphs 59-65; Count 2 is at paragraphs 59-64; Count 3 is at paragraphs 59-69. Thus, going forward, page numbers will be used for the Court's citations to the complaint.

claims that Barrett is liable under the second category, otherwise known as "false advertising." *See* Compl. at 16-17; *L.S. Heath & Son v. AT&T Info. Sys.*, 9 F.3d 561, 575 (7th Cir. 1993). Doctor's Data also makes a few allegations that relate to the dilution of its mark in violation of the Lanham Act. Compl. at 18. And although Doctor's Data uses the term "confusion" when it alleges that Barrett's "past and present acts and threatened future acts . . . have caused and are likely to continue to cause confusion to the public and to health care practitioners as to whether to employ Doctor's Data for samples and testing analysis, or to employ a laboratory approved by [Barrett]," *id.*, these allegations are not directed at stating a claim for the conduct described in category one.[4] Rather, this allegation relates to Doctor's Data's claim for trademark dilution.

1.

---

[4]Indeed, the first category of § 43(a) cases represent traditional trademark infringement claims. In those cases, "the harm to be remedied is the possible deception of consumers through the use of similar or identical trademarks. The paradigmatic trademark infringement claim arises when consumers seeking to obtain goods or services from one source – that is, the owner of a particular trademark – instead obtain them from another source while thinking the goods or services are from the first source due to confusingly similar trademarks. In other words, trademark infringement claims protect against a harm akin to fraud." *Facebook v. Teachbook.com*, – F. Supp. 2d –, 2011 WL 4449686, at *17 (N.D. Ill. Sept. 26, 2011) (citing McCarthy on Trademarks § 24:72). "The purpose of trademark law (setting to one side dilution cases) is to prevent confusion by consumers concerning the sources of the products they buy." *Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 993 (7th Cir. 2004). Here, Doctor's Data does not allege that Barrett is passing off his business and services as those of Doctor's Data's. For instance, Doctor's Data is not alleging that Barrett's use of the trademark "Doctor's Data" is for the purpose of influencing practitioners to send samples to Barrett for testing. Doctor's Data does not allege that Barrett is in the business of testing medical samples; rather, it claims that Barrett is telling practitioners *not* to use Doctor's Data, and this is the manner in which Doctor's Data and its trademark are being harmed.

First, under the "false advertising" prong of the Lanham Act, a plaintiff must show that (1) the defendant made a false statement of fact about its product or another's product in a commercial advertisement, (2) the statement has a tendency to deceive or actually deceived a substantial segment of its audience, (3) the deception is material, that is, it is likely to influence purchasing decisions, (4) the defendant caused its false statement to enter interstate commerce, and (5) the plaintiff has been or is likely to be injured as a result, either by direct diversion of sales from itself to defendant or by a loss of good will that is associated with its products. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999). Barrett argues that Doctor's Data does not have standing to sue him for false advertising under the Lanham Act because they are not competitors.

The Seventh Circuit has held that a party bringing a lawsuit under the false advertising prong of the Lanham Act must assert "a discernable competitive injury." *L.S. Heath & Son*, 9 F.3d at 575. In *L.S. Heath*, the plaintiff (a manufacturer of chocolate products, including the Heath bar) retained AT&T to install a new computer system for Heath's business, and permitted AT&T to use Heath's endorsement in a national advertising campaign. 9 F.3d at 565. After their business relationship soured, Heath filed a lawsuit against AT&T alleging, among other things, that AT&T's ad violated the Lanham Act because it portrayed Heath in a false light. *Id.* at 575. The Seventh Circuit held that, "[i]n order to have standing to allege a false advertising claim, . . . the plaintiff must assert a discernible competitive injury. Because Heath is not in the computer business and thus is not a competitor of AT&T, Heath does not

11

have standing to raise the false advertising claim." *Id.*; *see also Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 438 (7th Cir. 1999) (corporation that created and marketed cartoon characters lacked standing to bring Lanham Act deceptive advertising claim against professional football league and owner of St. Louis Rams franchise where corporation "has never been part of the NFL in any manner, shape, or form"). To support the requirement that the plaintiff allege competitive injury in false advertising cases, *L.S. Heath* cited *Waits v. Frito-Lay*, 978 F.2d 1093, 1108 (9th Cir. 1992), which in turn cited the more substantial explanation for the competitive-injury requirement in *Halicki v. United Artists Communications*, 812 F.2d 1213, 1214 (9th Cir. 1987). *Halicki* relied on the Lanham Act's definitional section, 15 U.S.C. § 1127, which in relevant part states that the intent of the Act is to protect "against unfair *competition*." (Emphasis added.) In other words, the Act does not create a general, free-floating "tort of misrepresentation," 812 F.2d at 1215, unanchored to unfair *competition*.

District courts within the Seventh Circuit have repeatedly interpreted *L.S. Heath* as having adopted a categorical approach to the standing requirement in Lanham Act cases. *See Emerging Material Techs. v. Rubicon Tech.*, 2009 WL 5064349, at *3 (N.D. Ill. Dec. 14, 2009) (to assert a "discernible competitive injury," the plaintiff must be the defendant's "direct competitor;" the plaintiff must compete "at the same level of business as the defendant"); *Zang v. Alliance Fin. Servs. of Ill.*, 2009 WL 1285531, at *3-4 (N.D. Ill. May 7, 2009) (plaintiff, an individual interested in purchasing a company, failed to allege "competitive" injury because he did not compete

12

with defendants, who were in the business of providing consulting and accounting services to assist individuals in locating businesses for purchase); *Platinumtel Commc'ns v. Sefcom*, 2008 WL 5423606, at *5-7 (N.D. Ill. Dec. 30, 2008) (recognizing other judges in the district have required plaintiff and defendant to be direct competitors); *Medallion Prods. v. McAlister*, 2008 WL 5046055, at *4 (N.D. Ill. Nov. 20, 2008) (supplier of pet stain removal products to distributors lacked standing to sue companies that sell similar products to consumers, suppliers, and retailers); *Gail Green Licensing & Design v. Accord*, 2006 WL 2873202, at *5 (N.D. Ill. Oct. 5, 2006) (designer of pet clothing lacked standing to sue retailers and manufacturers of clothing and accessories for pets); *see also Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 775 F. Supp. 2d 1082, 1091-92 (E.D. Wis. 2011); *Conrad v. Isthmus Pub., Inc.*, 2009 WL 3254024, at *3 (W.D. Wis. Oct. 5, 2009) (to have standing to allege a false advertising claim under the Lanham Act, plaintiff must be a competitor of defendant).

In its response, Doctor's Data does not argue that Barrett is one of its competitors. Instead, relying mostly on case law from other circuits, Doctor's Data argues that the parties do not need to be direct competitors for Doctor's Data to have standing under the Lanham Act. Pl.'s Resp. at 4-6. The one relevant Seventh Circuit case cited by Doctor's Data, *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899 (7th Cir. 2007), actually supports Barrett's position. In *Muzikowski*, the plaintiff appealed the district court's grant of summary judgment in favor of the defendant, as well as the court's sanctions order. *See* 477 F.3d at 910. However, before the plaintiff

filed his appeal with the Seventh Circuit, the district court made an express finding that the parties *were* competitors and concluded that the plaintiff's false advertising claim under the Lanham Act survived the defendant's motion to dismiss. *See Muzikowski v. Paramount Pictures Corp.*, 2003 WL 22872117, at *6 (N.D. Ill. Dec. 3, 2003) ("[W]e cannot agree with Paramount's contention that the Second Amended Complaint does not contain sufficient allegations that the two parties are competitors. Rather, it is apparent from the face of the complaint that Muzikowski claims that he and Paramount are competitors in marketing the goodwill he has accumulated with his philanthropic efforts."). The issue of whether the Lanham Act requires the plaintiff to be a competitor of the defendant was not an issue on appeal and the Seventh Circuit did not address it in *Muzikowski*, 477 F.3d at 907-08.

In this case, Doctor's Data does not allege that the parties are business competitors, and thus Doctor's Data cannot assert "a discernable competitive injury," which is required for a false advertising claim. *See L.S. Heath*, 9 F.3d at 757. Doctor's Data's false advertising claim under the Lanham Act is dismissed.[5]

## 2.

Doctor's Data also claims that Barrett is liable for "tradename dilution under [the] Lanham Act," but the allegations in support of this claim (as stated in Count 1)

---

[5]Because Doctor's Data's lack of standing disposes of the false advertising claim, the Court does not address Barrett's second argument regarding the nature of the alleged false statements at length. It is sufficient to note that, at this stage of the litigation, dismissal on this basis would not have been warranted. The complaint adequately alleges that Barrett's statements were made in a "commercial advertising or promotion" as required by the statute, 15 U.S.C. § 1125(a)(1)(B). *See infra* at 16.

are scarce. Compl. at 16. In his motion to dismiss, Barrett makes arguments relating to Doctor's Data's claim for trademark dilution under the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/65(a) (Count 2), but does not expressly address trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c). Def.'s Br. ¶¶ 49-56. In any event, the Court will consider all of Barrett's arguments in the context of both the federal and state dilution claims.

Section 43 of the Lanham Act was amended in 1995 "to provide a remedy for the 'dilution of famous marks.'" *Moseley v. V. Secret Catalogue, Inc.*, 537 U.S. 418, 420 (2003) (quoting 109 Stat. 985-986). To prove dilution under 15 U.S.C. § 1125(c) (or amended Section 43(c) of the Lanham Act), Doctor's Data must show (1) its mark is famous; (2) Barrett used the mark after the mark became famous; (3) Barrett's use of the mark caused dilution of the mark; and (4) Barrett's use of the mark was commercial and in commerce. *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 466 (7th Cir. 2000). The term "dilution" means "the lessening of the capacity of a famous mark to identify and distinguish goods or services," regardless of the presence or absence of: (1) competition between the owner of the famous mark and other parties; or (2) likelihood of confusion, mistake or deception. *Moseley*, 537 U.S. at 429 (quoting 15 U.S.C. § 1125(c)(1)); *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 812 (7th Cir. 2002) (citing 15 U.S.C. § 1127).

"Doctor's Data" is a registered and active trade name and trademark. Compl. at 19. Doctor's Data claims that Barrett's use of the mark on his websites damages Doctor's Data's name and business, and misrepresents the nature of Doctor's Data's

services to the public. *Id.* at 20. Barrett argues that his use of the mark is not "commercial." Def.'s Br. ¶¶ 41-46. Rather, Barrett states that he uses the mark in "media" and his websites report and opine on events and issues of public debate. *Id.* ¶¶ 43-44. Still, the complaint alleges that Barrett "solicits donations and contributions" on the websites. Compl. at 17. Those who visit the site can purchase products from Barrett's advertisers and are enticed "to visit hot-linked entities that pay referral fees" to Barrett. *Id.* In light of these allegations, the complaint sufficiently alleges that Barrett uses the mark in commerce. *See Steele v. Bulova Watch Co.*, 344 U.S. 280, 283 (1952) (courts must construe the phrase "in commerce" liberally, because the Lanham Act "confers broad jurisdictional powers upon the courts of the United States"); *Kraft Foods Holdings, Inc. v. Helm*, 205 F. Supp.2d 942, 947 (N.D. Ill. 2002).

Barrett also argues that his use of Doctor's Data's trademark could not possibly tarnish or blur the mark and, therefore, Doctor's Data cannot state a claim for dilution. Def.'s Br. at 21; *see Eli Lilly*, 233 F.3d at 466 (dilution may occur by either "blurring" or "tarnishing"). "Dilution by blurring . . . occurs when consumers see the plaintiff's mark used on a plethora of different goods and services . . . raising the possibility that the mark will lose the ability to serve as a unique identifier of the plaintiff's product." *Eli Lilly*, 233 F.3d at 466 (quotations omitted). Doctor's Data alleges that Barrett's actions dilute the qualities of Doctor's Data's mark. Compl. at 19. Doctor's Data alleges that Barrett posts articles about "shady" labs and "quack" physicians who defraud patients in association with the "Doctor's Data" mark. At this stage, Doctor's Data's allegations are sufficient to put Barrett on notice of Doctor's Data's claim of dilution.

16

Whether Doctor's Data can *prove* actual dilution must be the subject of further litigation beyond the motion-to-dismiss stage.

Accordingly, Doctor's Data has stated claims for trademark dilution under the Lanham Act and the Illinois Trademark Registration and Protection Act. The Court grants Barrett's motion to dismiss Count 1 in part (false advertising), but denies the motion with respect to trademark dilution under the Lanham Act and the ITRPA (Count 2).

## B.

In Counts 3 and 4, Doctor's Data alleges that Barrett's conduct also violates state unfair competition law: the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 (ICFA), and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 (IUDTPA). Because the Court has dismissed Doctor's Data's claim for false advertising under the Lanham Act, Barrett argues that Doctor's Data's claims under the ICFA and the IUDTPA must also be dismissed. Def.'s Br. ¶ 48.

In more than one case, the Seventh Circuit has "assumed without deciding, that [the Lanham Act] analysis also applies to Illinois false advertising claims." *Muzikowski*, 477 F.3d at 907; *Peaceable Planet*, 362 F.3d at 994. In *Muzikowski*, for example, the Seventh Circuit concluded that the defendant was entitled to summary judgment on the Lanham Act false advertising claim and, as such, summary judgment was appropriate for the ICFA and IUDTPA claims as well. *Id.* at 907-08; *see Muzikowski*, No. 01 C 6721 (R. 143-2 at 24 n.5), 2005 WL 1520800 (N.D. Ill. June 10, 2005) ("the legal inquiries required to assess a Lanham Act claim are identical to those

17

pertinent to the [ICFA and IUDTPA]"). Many district courts in this jurisdiction employ this approach. *See, e.g., Platinumtel*, 2008 WL 5423606, at *8 (because plaintiff lacked standing to bring a false advertising claim under the Lanham Act, its ICFA and IUDTPA claims must also be dismissed); *MJ & Partners Rest. Ltd. v. Zadikoff*, 10 F. Supp. 2d 922, 929 (N.D. Ill. 1998) (ICFA and IUDTPA claims "must rise or fall based on the Lanham Act"). In all of these cases, the courts held that "[c]laims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994) (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983)) (plaintiff did not have a protectable [WP doesn't recognize "protectable" but when I typed in "protectible" on MS Word, it autochanged to "protectable."] trade name under the Lanham Act and, therefore, could not prevail on its claims under the ICFA or IUDTPA).

Doctor's Data does not argue that a different approach is warranted here. The Court grants Barrett's motion to dismiss the ICFA and IUDTPA claims. The surviving Lanham Act claim for trademark dilution does not affect this result.[6]

---

[6] The ICFA and IUDTPA protect the same interests as those outlined in § 43(a) of the Lanham Act. Trademark dilution is a separate theory of recovery that does not require confusion, competition, or actual economic injury. *See* § 43(c).

18

## C.

Doctor's Data claims that the false statements on Barrett's websites are defamatory *per se* (Count 5). Compl. at 29-30. "To prove defamation, a plaintiff must show that the defendant made a false statement about him, that there was an unprivileged publication to a third party with fault by the defendant, and that the publication damaged plaintiff." *Vickers v. Abbott Labs.*, 719 N.E.2d 1101, 1107 (Ill. App. Ct. 1999). In Illinois, statements "that impute a person lacks ability or otherwise prejudices that person in her or his profession" are considered defamatory *per se*. *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 839 (Ill. 2006).

Barrett argues that the statements identified in the complaint are not actionable because they are either substantially true, capable of an innocent construction, an expression of an opinion, or time-barred by the one-year limitations period. Def.'s Br. ¶¶ 73, 75. But at this stage of the litigation, these defenses do not require dismissal because the complaint's allegations must be accepted as true (so the alleged defamatory statements must be deemed, for now, to be false), nor do the alleged statements constitute mere opinion or subject to an innocent construction. Thus, at best, Barrett must await discovery and obtain or offer hard evidence before challenging the defamation claim based on those defenses. And Doctor's Data alleges that various statements were published within one year of filing this action, and thus the limitations period is satisfied, at least on the face of the complaint. *See Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 435 (7th Cir. 2009) (Illinois defamation actions have a one-

year statute of limitations, which begins to run on the date of publication of the defamatory material). The motion to dismiss Count 5 is denied.

In the alternative to defamation *per se*, Doctor's Data claims that Barrett's statements are defamatory *per quod* (Count 6). Loosely translated, *per quod* means "with explanation." *Heerey v. Berke*, 544 N.E.2d 1037, 1041 (Ill. App. Ct. 1989). "For defamatory *per quod* statements, extrinsic facts are required to explain their defamatory meaning. The innocent construction rule does not apply because the whole point of a *per quod* defamation action is to establish the defamatory character of a statement otherwise innocent on its face." *Quinn v. Jewel Food Stores, Inc.*, 658 N.E.2d 1225, 1232 (Ill. App. Ct. 1995). Also, in a defamation *per quod* action, damage to the plaintiff's reputation is not presumed. Rather, the plaintiff must plead and prove special damages to recover. *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1229 (Ill. 1996).

Here, Doctor's Data's defamatory *per quod* claim must be dismissed for failure to plead special damages. "It is well settled that, in order to prevail on a claim for defamation *per quod*, a plaintiff must allege special damages with particularity." *Becker v. Zellner*, 684 N.E.2d 1378, 1387 (Ill. App. Ct. 1997). The damages alleged in Doctor's Data's complaint are too general and, even if proven, would not entitle them to relief for defamation *per quod*. *See id.* For instance, although Doctor's Data alleges that Barrett's statements have and will cause damage to its business, Doctor's Data fails to allege that it has actually lost customers. *See Downers Grove Volkswagen v. Wigglesworth Imports*, 546 N.E.2d 33, 38 (Ill. App. Ct. 1989) (alleging that a customer

20

"intended" to no longer do business with plaintiff does not allege special damages). And although Doctor's Data contends that its reputation was harmed, there is no indication in the complaint that this ever translated into actual damages of a pecuniary nature. *See Imperial Apparel v. Cosmo's Designer Direct*, 882 N.E.2d 1011, 1017-18 (Ill. 2008); *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006) (in *per quod* action, damage to plaintiff's reputation is not presumed); *Maag v. Ill. Coalition for Jobs, Growth & Prosperity*, 858 N.E.2d 967, 975-76 (Ill. App. Ct. 2006).

For these reasons, the Court denies Barrett's motion to dismiss the claim for defamation *per se* (Count 5), but grants the motion with respect to the alleged defamatory *per quod* claim (Count 6).

## D.

Doctor's Data claims that the false information published on Barrett's websites interferes with Doctor's Data's existing contracts with its current clients, as well as contracts with prospective clients. Compl. at 31-33. "Interference with contract and interference with business relations (sometimes called prospective economic advantage) are related torts." *Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 731 (7th Cir. 1999).

First, a plaintiff can recover for interference with existing contractual rights by proving "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages."

*HPI Health Care Servs. v. Mt. Vernon Hosp.*, 545 N.E.2d 672, 676 (Ill. 1989). Barrett argues that Doctor's Data's allegations fall short because, among other deficiencies, it has not pointed to a "valid and enforceable contract." Def.'s Br. ¶¶ 102-03. At this stage of the litigation, however, Doctor's Data need only allege factual allegations that allow the Court to draw the reasonable inference that Barrett interfered with an existing client contract. *See McCauley v. City of Chicago*, – F.3d –, 2011 WL 4975644, at *3 (7th Cir. 2011). The allegations in Doctor's Data's complaint meet this standard. For instance, Doctor's Data alleges that Barrett posted information on his websites for the purpose of inducing physicians who "[r]ely on Doctor's Data and its services in their medical practices and in the treatment of their patients" to halt referrals to Doctor's Data and employ other labs instead. Compl. at 5. Viewing this allegation in the light most favorable to Doctor's Data, it is plausible that Doctor's Data has, or had, valid agreements (whether oral or written) with physicians who use its testing services. The motion to dismiss this claim is denied.

To state a claim for tortious interference with a prospective business relationship under Illinois law, a plaintiff must allege: "(1) [its] reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Int'l Mktg.*, 192 F.3d at 731 (quoting *Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 370 (Ill. 1998)). Purposeful interference exists only if the defendant "acted with the aim of interfering"

22

with the plaintiff's expectancy. *Atanus v. Am. Airlines*, 932 N.E.2d 1044, 1048 (Ill. App. Ct. 2010). Barrett argues that he cannot be held liable for disseminating truthful information to others. Def.'s Br. ¶ 107. Once again, however, this factual argument must be reserved for later in the litigation, when the allegations are no longer accepted as true. For now, Doctor's Data's allegations in Count 7 are sufficient.

## E.

Doctor's Data alleges that Barrett's publication of false and defamatory material amounts to fraud (Count 8). Compl. at 33-34. This count must be pled with particularity under Federal Rule of Civil Procedure 9(b). To state a claim for fraudulent misrepresentation, a plaintiff must establish the following elements: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Doe v. Dilling*, 888 N.E.2d 24, 35-36 (Ill. 2008). Barrett argues that although Doctor's Data has identified allegedly false statements made by Barrett, it fails to plead the remaining elements: intent to induce, justifiable reliance, and damages. Def.'s Br. ¶¶ 110-15.

Doctor's Data fails to allege that *it* was fraudulently induced by Barrett's alleged misrepresentations. Doctor's Data claims that Barrett's fraudulent statements were made with the intention and expectation that *readers* of the websites would believe and rely on them. Compl. at 33. Doctor's Data cites one district court decision in support of its argument that it may state a claim for fraud by alleging that a third-party's

23

reliance on fraudulent statements caused damage to Doctor's Data. Pl.'s Resp. at 30 (citing *Blair v. Supportkids, Inc.*, 222 F. Supp. 2d 1038, 1042-43 (N.D. Ill. 2002)). However, in evaluating fraud claims, Illinois courts hold that, in order to state a claim, the defendant's false statement must have been made "for the purpose of inducing *the plaintiff* to act." *Janowiak v. Tiesi*, 932 N.E.2d 569, 579 (Ill. App. Ct. 2010) (emphasis added).

The Court is not aware of – and Doctor's Data has not offered – any Illinois case law or other binding authority stating that a plaintiff can state a claim for fraudulent misrepresentation, even though the plaintiff knew the statement was false and did not rely on it. In fact, Illinois courts have found that the law requires quite the opposite in the context of statutory fraud. Recently, the Illinois Supreme Court considered the issue of "indirect deception" under the Illinois Consumer Fraud Act. *De Bouse v. Bayer*, 922 N.E.2d 309, 316-17 (Ill. 2009). The state Supreme Court did confirm that "indirect" deception can establish an ICFA fraud claim, but the defendant's intent must still be to influence the plaintiff: "an alleged deception need not always be direct between the defendant and the plaintiff. Instead, 'it is enough that the statements by the defendant be made with the intention that it reach the plaintiff and influence his action and that it does reach him and that he does rely upon it, to his damage.'" *Id.* (quoting *Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 218 (Ill. 2004)). Although *De Bouse* and *Shannon* dealt with fraud claims under the ICFA, the Illinois Supreme Court "cited with unqualified approval [the] requirement of actual deception in common-law fraud cases as well." *Vill. of Bensenville v. City of Chicago*, 906 N.E.2d

24

556, 591 (Ill. App. Ct. 2009). Thus, in order to plead fraud in Illinois, plaintiffs must allege that the claimed misrepresentations "flowed to plaintiffs and influenced their actions." *Id*. Other common law claims – such as tortious interference with contracts – supply the remedies for conduct directed to third-parties which result in injury to the plaintiff; the elements of fraud remain the same. In this case, Doctor's Data alleges no reliance of their own and their fraud claim must be dismissed. *See id*.; *Premier Elec. Constr. Co. v. Morse/Diesel, Inc.*, 628 N.E.2d 1090, (Ill. 1993) ("a common law fraud claim requires actual reliance which means that the misrepresentations must reach the plaintiff who must reasonably rely on them"). Accordingly, Count 8 is dismissed for failure to state a claim.

## F.

Count 9 alleges that Barrett conspired with others to commit fraud, defame Doctor's Data, and interfere with Doctor's Data's existing and future business contracts. Compl. at 34-36. In Illinois, the elements of civil conspiracy are: "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 807 N.E.2d 461, 470 (Ill. 2004).

Doctor's Data fails to state a claim for common law fraud; therefore, its conspiracy claim must be based on either defamation *per se* or tortious interference with existing contracts or prospective business relations. *See Thomas v. Fuerst*, 803 N.E.2d 619, 625-26 (Ill. App. Ct. 2004) (conspiracy is not an independent tort). Doctor's

Data alleges that Barrett conspired with David J. Wilzig, an attorney "who is well known for filing lawsuits promoting Barrett's causes." Compl. at 35. Doctor's Data claims that Barrett and Wilzig work together to intentionally harm Doctor's Data's reputation and business by disseminating defamatory information on the internet and inducing Doctor's Data's clients to file frivolous lawsuits against Doctor's Data. *Id.* These allegations are sufficient to raise a plausible claim for Doctor's Data's right to relief for civil conspiracy to commit defamation and interfere with Doctor's Data's existing and prospective business relations. Barrett's motion to dismiss Count 9 is denied.

## G.

Finally, Doctor's Data alleges that Barrett continues to conduct business on behalf of Quackwatch, Inc. even though the business dissolved in April 2009. Compl. at 36-38. Under Illinois law, a director of a corporation is personally liable for the improper acts of that corporation after its dissolution. 805 ILCS 5/8.65(3) ("The directors of a corporation that carries on its business after the filing by the Secretary of State of articles of dissolution, otherwise than so far as may be necessary for the winding up thereof, shall be jointly and severally liable to the creditors of such corporation for all debts and liabilities of the corporation incurred in so carrying on its business.").

Here, Doctor's Data claims that Quackwatch, Inc. never properly wound up its business, and Barrett continues to act on its behalf, asserting corporate powers for

which he has no authority. Compl. at 37. The allegations in the complaint are sufficient at this stage. Barrett's motion to dismiss Count 10 is denied.

## IV.

To summarize, the Court grants Defendants' motion to dismiss [R. 38] Counts 3, 4, 6, and 8. Doctor's Data's claim for false advertising under Count 1 is dismissed as well. The Court denies Defendants' motion with respect to Counts 2, 5, 7, 9, and 10. Again, the Lanham Act claim survives solely with respect to the trademark dilution claim under § 43(c). Finally, Doctor's Data's separate claim for injunctive relief (Count 11) is dismissed. Injunctive relief is a remedy, not an independent cause of action.


ENTERED:


    /s/ Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge


DATE: November 22, 2011